UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HEIDI R.,[1] | ) |
| | ) No. 20 CV 5617 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| KILOLO KIJAKAZI, Commissioner of Social Security, | ) |
| | ) October 30, 2023 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Heidi R. filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), alleging that she is unable to work because of her migraines and back pain. Heidi previously moved this court to overturn the Social Security Administration's ("SSA") decision denying her benefits claims, and this court remanded the case to the Commissioner. *Heidi R. v. Saul*, No. 18 CV 8534, Dkt. No. 25 (Oct. 11, 2019). After another hearing at the administrative level, the presiding administrative law judge ("ALJ") again denied Heidi's disability claims. Heidi then filed this lawsuit seeking judicial review. Before the court are the parties' cross-motions for summary judgment. For the following reasons, Heidi's motion is denied, and the government's is granted:

---

[1] Pursuant to Internal Operating Procedure 22, the court uses only Plaintiff's first name and last initial in this decision to protect her privacy to the extent possible.

## Procedural History

Heidi filed her DIB and SSI applications in March 2015, claiming disability onset in April 2010. (Administrative Record ("A.R.") 15, 204-15, 1424, 1611-14.) After her applications were denied initially and upon reconsideration, (id. at 15, 94-122), Heidi requested and was granted a hearing before an ALJ, (id. at 160-62, 164-68). Following that first hearing, the ALJ issued a decision concluding that Heidi is not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council declined to review it. *See Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). Heidi timely filed a lawsuit seeking judicial review of the final agency decision, and the parties consented to the court's jurisdiction. *See* 28 U.S.C. § 636(c). The court subsequently ruled in Heidi's favor and remanded the case to the SSA for further proceedings. (A.R. 1485-97, 1505-06.)

Heidi then appeared with an attorney at a second hearing—held telephonically in April 2020—during which she and a vocational expert ("VE") testified, (A.R. 2372-2404), and in May 2020 the ALJ again concluded that Heidi is not disabled, (id. at 1424-36). Thereafter, Heidi filed this second lawsuit seeking judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), and the parties consented to this court's jurisdiction, (R. 7).

## Analysis

Heidi argues that the ALJ erred when: (1) evaluating the medical opinion evidence; (2) developing her residual functional capacity ("RFC"); and (3) assessing whether her subjective symptom statements were consistent with her daily activities.

2

(R. 22, Pl.'s Br. at 4-16.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and her decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ must "provide a 'logical bridge' between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021). Put another way, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). Having considered the parties' arguments and the record, the court concludes that the ALJ supported her decision with substantial evidence.

A. **Subjective Symptom Analysis**

Because an improper symptom assessment typically requires a remand, *see Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014), the court begins with Heidi's argument that the ALJ improperly evaluated her subjective statements about activities of daily living, (R. 22, Pl.'s Br. at 15-16). When assessing a claimant's subjective reports, an ALJ considers objective medical evidence, daily activities, frequency and intensity of symptoms, medications, treatment to relieve pain or other

3

symptoms, and functional limitations. *See* SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). An ALJ's symptom evaluation generally is entitled to great deference because the ALJ assessed the claimant's credibility firsthand, to the extent possible in a telephonic hearing. *See Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). As such, a court will not disturb a symptom evaluation if it is based on specific findings and evidence and not "patently wrong"—that is, so long as it does not "lack[] any explanation or support." *Id.* at 815-16 (citing *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008)); *see also Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013).

When evaluating Heidi's symptom statements, the ALJ considered her testimony at the first hearing that she had right-side nerve damage and weakness as a result of her 2010 brain aneurysm, precluding her from driving for a month after the aneurysm. (A.R. 1429.) Heidi also said during her first hearing that she could sit for only about 10 to 15 minutes because of leg pain and that she suffers migraines at a 10/10 pain level 3 to 4 days a month. (Id.) The ALJ then discussed the second hearing, during which Heidi testified that she underwent a lumbar fusion procedure but suffers from right-side sciatic pain, including in her hip, and a recurrence of migraines, which require her "to go to a dark room." (Id. at 1429-31; see also id. at 2385.) In terms of her aneurysm, Heidi said this impairment has largely stabilized. (Id. at 1430; see also id. at 2384.) Although "she does not do much around the house," Heidi testified that she can "prepare simple meals" and "is able to drive for up to 35 miles." (Id.).

4

The ALJ also discussed objective medical evidence relating to Heidi's symptom statements, pointing out that: "[p]hysical examinations showed only mixed findings of range of motion, sensation, gait, and station"; the record was "devoid" of references to effects of her migraines; and mental status examinations were normal. (Id. at 1431.) The ALJ acknowledged Heidi's April to May 2010 hospitalization following her aneurysm and subsequent complications, use of a cane to walk, and reports of "low back pain, leg pain, gait problems, headaches, weakness, numbness, and compatibility issues with her shunt." (Id. at 1430.) While the record shows "abnormal findings of strength and sensation, particularly in the right lower extremity," "shunting and coil embolization," "decreased size of ventricles" in her brain, "lumbar tenderness," and mixed "[s]traight-leg raises and sensation," the ALJ determined that the "intermittent" nature of Heidi's pain symptoms and "normal neurological signs" justified functional limitations but not to the extent alleged. (Id.)

The ALJ further considered treatment Heidi received, including a lumbar fusion for degenerative changes in the lumbar spine and medications to treat migraines and pain. (Id.) Consistent with Heidi's testimony and reports to providers, such treatment provided relief without disabling side effects. (Id.) Other treatments included more "conservative" modalities, such as epidural steroid injections and physical therapy, according to the ALJ. (Id.) The ALJ also recognized that insurance and financial difficulties prevented Heidi from receiving some treatment. (Id. at 1429-31.) Yet the ALJ concluded that while Heidi's treatment shows some degree of limitation, it was not as severe as she alleged.

5

Next, the ALJ turned to Heidi's daily activities, noting that she is able to clean, mow the lawn, do laundry, mop, wash dishes, and pay bills. (Id. at 1431.) She also "could pay attention for hours, finish what she starts most of the time, spend a day reading, and follow written and spoken instructions." (Id.) Nevertheless, in light of Heidi's "longitudinal record of treatment for her status post brain aneurysm, back impairment, migraines, surgical history of a lumbar fusion, medical imaging corroborating abnormalities in [Heidi's] brain and lumbar spine, and residual use of a cane," (id.), the ALJ assigned Heidi an RFC limiting her to sedentary work with exertional and postural restrictions, including that she can: operate foot controls occasionally with the right foot, but frequently with the left foot; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl, work around moving parts, operate a motor vehicle, and have exposure to vibration; and never climb ladders, ropes, or scaffolds or work at unprotected heights, (id. at 1428-29).

Heidi challenges the ALJ's treatment of her daily activities. She first contends that "the ALJ was required to discuss whether her statements about activities of daily living were consistent with her other statements and the medical evidence." (R. 30, Pl.'s Reply at 14; see also R. 22, Pl.'s Br. at 15.) But the ALJ did just that—she discussed Heidi's testimony during the first and second hearings, her reports to providers, and her function report, and then explained how the objective medical evidence "suggest[ed] . . . a degree of functional limitation, but not to the extent alleged." (A.R. 1429-31.) Heidi further criticizes the ALJ for not accounting for her limitations in performing daily activities, such as her need "to sit on the floor to scoop

6

cat litter," "to sit to dress, shave, and shower," and to "rest while cooking." (R. 22, Pl.'s Br. at 15; see also A.R. 2390-92.) While an ALJ cannot equate an ability to perform daily activities "with the challenges of daily employment in a competitive environment," the ALJ "is nonetheless required to consider daily activities" in "determining the extent to which [a claimant's] symptoms limit" her RFC. *Hightshoe v. Kijakazi*, No. 22 CV 2359, 2023 WL 3531473, at *2 (7th Cir. May 18, 2023) (internal quotations omitted) (citing 20 C.F.R. § 404.1529(c)(3)(i)); *see also Prill v. Kijakazi*, 23 F.4th 738, 748 (7th Cir. 2022) ("[I]t is entirely permissible to examine all of the evidence, including a claimant's activities, to assess whether testimony about the effects of . . . impairments was credible or exaggerated." (citation omitted)). Here, the ALJ characterized Heidi's daily activities in a manner "consistent with her testimony at the hearing, and nothing in the decision suggests that the ALJ equated these activities of daily living with those of a full-time job." *Buttles v. Kijakazi*, No. 22 CV 2844, 2023 WL 5220913, at *4 (7th Cir. Aug. 15, 2023) (internal quotations and citation omitted). Accordingly, the court will not disturb the symptom evaluation because the ALJ based her analysis on "specific findings and evidence," and it was not "patently wrong." *Murphy*, 759 F.3d at 815.

**B.      Opinion Evidence**

Heidi argues that the ALJ improperly evaluated her primary care physician Dr. Scott Rusco's opinions. (R. 22, Pl.'s Br. at 4-9.) A treating source's opinion in cases filed before March 27, 2017, is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and

7

"not inconsistent with other substantial evidence." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (quotation and citation omitted). An ALJ may give such an opinion less weight, however, if she offers "good reasons," *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016), and the Seventh Circuit "uphold[s] all but the most patently erroneous reasons for discounting a treating physician's assessment," *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (quoting *Luster v. Astrue*, 358 Fed. Appx. 738, 740 (7th Cir. 2010)). "Once contrary evidence is introduced . . . a treating physician's opinion becomes just one piece of evidence for the ALJ to evaluate," and the ALJ must then analyze various factors in deciding the weight to afford it, if any. *Ray v. Saul*, 861 Fed. Appx. 102, 105 (7th Cir. 2021). Those factors include: the length, nature, and extent of the treatment relationship; frequency of examination; physician's specialty; types of tests performed; and consistency with and support for the opinion in the record. 20 C.F.R. § 404.1527(c). An ALJ's decision to discount a treating physician's opinion after considering these factors stands if she "minimally articulated" her reasons—"a very deferential standard." *Elder*, 529 F.3d at 415.

The ALJ afforded "little weight" to Dr. Rusco's June 2017 opinion that "[i]t doesn't seem that [Heidi] is capable of working at this point because even in a sedentary job she cannot sit for any extended period of time and she has to keep getting up and sitting back down/changing positions." (A.R. 1433 (citing id. at 1299-1300).) In discounting this opinion, the ALJ noted that Dr. Rusco himself qualified his opinion by stating that "he did not know if surgery or other interventions were advised by [Heidi's] back specialist and felt [that the specialist] should be able to

8

confirm her limitations." (Id. (citing id. at 1300 (Dr. Rusco's note indicating that he "would defer to the back specialist especially in view of the fact that [Heidi] hasn't had a complete set of epidural steroid injections and [Dr. Rusco has] no idea if surgery or any other intervention has been contemplated or advised by the back specialist")).) Specifically, Dr. Rusco stated, "I still think the orthopedic [doctor] or the pain specialist [following Heidi] would be able to or should even confirm this." (Id.) The ALJ also found that Dr. Rusco's statements were "inconsistent with the physical examination on that visit noting limited straight leg raising due to pain, yet intact reflexes, intact sensation, no upper extremity issues, and a fairly well compensated motor exam." (Id.) And the ALJ noted that Dr. Rusco's treatment records prior to June 2017 do not support his opinion insofar as they "do not include complaints of being unable to sit," and rely largely on Heidi's subjective reports. (Id. (citing id. at 558, 577-78, 601).)

The ALJ similarly assigned only "partial weight" to Dr. Rusco's May and October 2011 opinions that Heidi could work with exertional and postural restrictions, including that her ability to walk, stoop, and sit would be reduced 20% to 50% of the time during an 8-hour workday, 5 days a week. (Id. (citing id. at 557, 600).) The ALJ found that the objective medical evidence shows Heidi could perform "a range of sedentary work." (Id.)

Heidi challenges the ALJ's evaluation of Dr. Rusco's opinions, asserting that the ALJ failed to provide a "good reason" for not giving controlling weight to her treating physician. (R. 22, Pl.'s Br. at 5.) She contends that "in assuming that

9

Dr. Rusco doubted his own opinion," the ALJ speculated about what level of work Heidi could perform. (Id.) The court disagrees. The ALJ merely pointed out what Dr. Rusco himself said in his opinion—that Heidi's treating orthopedist or pain specialist should confirm whether she is capable of working, even in a sedentary job, because of her reported inability to sit for an extended time. (A.R. 1433 (citing id. at 1300).)

But even if Dr. Rusco's own qualifying statements were not enough, the ALJ pointed out the inconsistency between Dr. Rusco's June 2017 opinion and his examination findings on the same date, (id. (citing id. at 1299)), as well as the lack of supportability for a restriction precluding Heidi from sitting for long periods based on his prior treatment records, (id.). The applicable regulation requires the ALJ to consider in part the consistency and supportability of Dr. Rusco's opinion, 20 C.F.R. § 404.1527(c)(4), which she did. Heidi points to other evidence she contends supports Dr. Rusco's opinion, (R. 22, Pl.'s Br. at 8), but this court finds no evidence of cherry-picking, as the ALJ acknowledged Heidi's reports of "low back pain, leg pain, gait problems, headaches, weakness, [and] numbness," along with medical evidence showing "mixed findings of range of motion, sensation, gait, [] station" and straight-leg raises and "abnormal findings of strength and sensation, particularly in the right lower extremity," (A.R. 1430). Although Heidi complains that the ALJ did not discuss other factors under 20 C.F.R. § 404.1527(c)(4), such as the length, nature, and extent of the treatment relationship, (R. 22, Pl.'s Br. at 7-8), the ALJ cited specific pages of Dr. Rusco's opinion showing he had "known [Heidi] for over 20 years," and

10

had treated her for a variety of impairments, (A.R. 1433 (citing id. at 1299-1300)). Accordingly, the court finds no error in the ALJ's evaluation of Dr. Rusco's opinions.

**C.     RFC Assessment**

Heidi asserts that the ALJ erred when assessing her RFC. (R. 22, Pl.'s Br. at 9-15.) An RFC measures the tasks a person can perform given her limitations based on "all the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). When assessing the RFC, the ALJ must "evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). Where the ALJ does not rely upon medical opinions, she must "thoroughly discuss[] the medical and other evidence," considering each of the claimant's "impairments and related function deficits," *Nina Joyce H. v. Saul*, No. 18 CV 4913, 2020 WL 212771, at *7 (N.D. Ill. Jan. 14, 2020), and "describ[e] how the evidence supports each [RFC] conclusion," *Norris v. Astrue*, 776 F. Supp. 2d 616, 637 (N.D. Ill. 2011).

As discussed, the ALJ assigned Heidi an RFC limiting her to sedentary work with several exertional and postural restrictions. (A.R. 1428-29.) The ALJ also included non-exertional restrictions—limiting her to simple, routine tasks with the use of judgment related to simple, work-related decisions. (Id.) In developing this RFC, the ALJ reviewed the relevant evidence of record, including Heidi's medical history, observations recorded in treatment notes, medical opinion evidence,

11

complaints of pain and effects of her impairments, and daily activities. *See* SSR 96-8p, 1996 WL 374184, at *5; (A.R. 1428-34). The ALJ then concluded that Heidi's "longitudinal record of treatment for her status post brain aneurysm, back impairment, migraines, surgical history of a lumbar fusion, medical imaging corroborating abnormalities in [Heidi's] brain and lumbar spine, residual use of a cane, and the opinions of medical sources, consultative examiners, and state agency consultants" supports the RFC assessed. (A.R. 1433-34.)

Heidi argues that the ALJ filled an evidentiary void with her own lay opinion and did not sufficiently articulate how she reached the limitations that she defined. (R. 22, Pl.'s Br. at 10-15.) The government responds that Heidi "nitpicks" the ALJ's decision and turns the applicable standard "on its head" by suggesting that the ALJ must prove that Heidi is not disabled, rather than following the regulatory framework requiring her to prove she is disabled. (R. 29, Govt.'s Mem. at 9.) The government also asserts that Heidi "demand[s] a level of articulation not supported by the regulations, agency policy or court precedent." (Id.) The court agrees with the government and finds that the ALJ supported her RFC assessment with substantial evidence. The ALJ here engaged significantly with the medical record and grounded her RFC in all the relevant evidence of record, as discussed. By explaining how the evidence supported her RFC finding, the ALJ "filled any dearth created in the absence of adopted medical opinions." *Ronald L. v. Kijakazi*, No. 20 CV 7335, 2023 WL 3689457, at *6 (N.D. Ill. May 26, 2023); *see also Norris*, 776 F. Supp. 2d at 637.

12

Heidi also points to evidence she says demonstrates she cannot work with the limitations assessed by the ALJ. (R. 22, Pl.'s Br. at 11-15.) For example, Heidi asserts that she can sit for only 10 to 15 minutes, and her "degenerative disc disease, lumbar spine and leg pain, and difficulty sitting for extended periods" shows that she cannot perform sedentary work. (Id. at 12.) She also contends that her headaches render her "bedridden . . . three to four times per month," require her to "lie down in a dark room," and result in her being off task more than allowed to sustain competitive work. (Id. at 12-14.) But as explained, the ALJ was not required to credit Heidi's subjective complaints. *See Brenda L. v. Saul*, 392 F. Supp. 3d 858, 867 (N.D. Ill. 2019). Insofar as Heidi's argument amounts to a request to reweigh the evidence or substitute the court's judgment for that of the ALJ's, the court declines to do so. *Deborah M.*, 994 F.3d at 788. Because the ALJ supported her RFC assessment with substantial evidence, (A.R. 1428-34), remand is not warranted on this ground.

## Conclusion

For the foregoing reasons, Heidi's motion for summary judgment is denied, and the government's is granted.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**

13